IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA

ISMAEL BRIZUELA
    Petitioner,

v.

IMMIGRATION CENTERS OF
AMERICA LLC (ICA),
THE EIGHT SECRET OWNERS OF ICA
(THE EIGHT),
TRINITY FOOD SERVICES,
MR. JEFFREY CRAWFORD, AND
MR. DOUGLAS KINGERY
    Respondents.

Civ. Case. No: 15-1662

[Filed stamp: DEC 17 2015]

---

**CRUEL AND UNUSUAL PUNISHMENT IN VIOLATION OF THE EIGHTH
AMENDMENT TO THE UNITED STATES CONSTITUTION**

---

## AFFIDAVIT OF FACTS

First being duly sworn, Ismael Brizuela deposes and states the following:

1. My name is Ismael Brizuela, I was born on 08/26/1960. As a little boy in the mid 1960s I remember eating a little portion of rice at least one a day, seven days a week. Rice was an essential part of our diet; even as an adult I have been eating rice at least 5 times a week. Sometimes I find myself in places where I cannot buy cooked rice; otherwise I would eat a portion of it every day.

2. However, on 02/21/2015 everything changed, it changed in the way I view food, especially rice. My whole life was and has been affected ever since that day because I no longer can eat rice, let alone think about it.

3. This is such a big deal to me because for the last 50 years of my life, I have eaten rice pretty much every day, and all over a sudden I can't eat something that i literally grew up with. Now every image of a grain of rice resembles maggots in my mind and I can't get rid of this resemblance mentally. And maggots are exactly what we got served for lunch at ICA Farmville facility.

4. I along with my fellow detainees in our Dorm was served with rotten maggot infested food. This incident was pretty much acknowledged to have taken place by everybody at the facility. Everyone from the low ranking staff members to the highest ranking official at the facility, Director Jeffrey Crawford and even the ICE agent at the facility Ms Davila acknowledged the fact that the food was infested with maggots.

5. Unbeknownst to me I ate maggot infested food, an experience that has left me permanent mental harm.

6. Consequently with what I went through that day, I began experiencing excruciating nightmares about maggots in my food. Often times in my dreams I find myself eating my normal portions of rice with my meal but soon after I finish eating, the nightmares begin I feel the rice I have eaten was not actually rice but maggots. Often times I have nightmares of rotten maggots coming out my nose, ears and mouth. I have nightmares of my whole body being used as a breeding ground for maggots. I feel maggots inside me, I see them crawling just under my skin. My mind is now messed up. My skin itches and I feel hundreds of maggots feasting in my stomach. Talking about this incident and what I am going through right now causes me both mental torture and anguish. I am a 55 year old man in tears and pain. It feels like I am being eaten alive by those maggots from inside out. According to people around me when I sleep they say that at night, I squirm, toss and turn, I sometimes usually don't realize what is going on within me. I usually wake up sweating and with migraines. I am now leaving in a new world that I don't wish on anybody.

Respectfully deposed

*Ismael Brizuela* (signature)
Ismael Brizuela

County/City of **Prince Edward**
Commonwealth/State of **Virginia**
The foregoing instrument was acknowledged before me this **6** day of **Dec**, **2015**, by
**Brizuela-Marcia, Ismael**
(name of person seeking acknowledgement)

Jason Lee Baker, Notary Public No. 7572090
My Commission Expires January 31, 2017

Notary is for Signature only.

[Notary Seal: JASON LEE BAKER, NOTARY PUBLIC, REG # 7572090, MY COMMISSION EXPIRES 1/31/2017, COMMONWEALTH OF VIRGINIA]

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| ISMAEL BRIZUELA <br>     PETITIONER, <br><br> V. <br><br> IMMIGRATION CENTERS OF <br> AMERICA LLC (ICA), <br> THE EIGHT SECRET OWNERS OF ICA <br> (THE EIGHT), <br> TRINITY FOOD SERVICES, <br> MR. JEFFREY CRAWFORD, AND <br> MR. DOUGLAS KINGERY <br>     RESPONDENTS. | CIV. CASE. NO: _____ |

## STATEMENT OF FACT

1. COMES NOW Ismael Brizuela, *Pro se*, to submit this civil rights/ tort complaint involving the degrading conditions of his confinement, deprivation of his rights, deliberate indifference, and cruel and unusual punishment.

2. The plaintiff invokes <u>Haines v. Kerner</u>, 404 U.S. 519, 30 L. Ed 2d 652, 92 S. Ct. 594, (1972). *Pro se* litigant's pleadings are to be construed liberally and held to less stringent standards than formal pleadings drafted by lawyers. If courts can reasonably read pleadings to state valid claims on which litigants could prevail, it should do so, despite failure to cite proper legal theories...

3. The plaintiff brings this action under all applicable laws to redress the violations by defendants, of the constitutional rights of plaintiff.

## JURISDICTION

4. This court has jurisdiction of this action under 28 U.S.C. 1343(3), this brings an action to redress the deprivation of rights secured by the constitution of the United States and Civil Rights Act, 42 U.S.C. §1983.

5. This court also has jurisdiction of this action under 28 U.S.C. 1343(4), this being an action to recover damages and to secure declaratory, injunction, and other equitable reliefs under Acts of Congress providing for the protection of civil rights, specifically the Civil Rights Act 42 U.S.C. 1983.

6. This court has jurisdiction of this action under 28 U.S.C. 1331(a), this being an action wherein the matter in controversy arises under the Constitution of the United States.

7. This court also has jurisdiction of this action under 28 U.S.C. 2201 and 2202, and Rules 57 and 65 of the Federal Rules of Civil Procedure, this being an action for a declaration of rights of the plaintiff, and for injunctive and other equitable reliefs based upon said declaratory judgment, under the Civil rights Act, 42 U.S.C. 1983.

## PLAINTIFF

8. Plaintiff, Ismael Brizuela, is an Immigration and Customs Enforcement (ICE) detainee, housed at Immigration Centers of America ("ICA") in Farmville, Virginia. As at the time of this filling Mr. Brizuela is still housed at the said facility.

## DEFENDANTS

9. Defendant, Immigration Centers of America, is a **for profit,** an ICE/DHS subcontracted facility for illegal Immigrants in Farmville Virginia, this facility has implemented, executed and adopted the policies, practices, acts, and omissions complained of herein through formal adoption or pursuant to governmental customs. The policies, practices, acts, and omissions complained of herein are customs and usages of the defendant, Immigration Centers of America.

10. Defendants, the secret eight owners of ICA to be served through their attorney Mr. Edward E. Bagnell, Jr. at SPOTTS FAIN PC, directly profit from mistreatment of detainees. Their company has implemented, executed and adopted the policies, practices, acts, and omissions complained of herein through formal adoption or pursuant to governmental customs. The policies, practices, acts, and omissions complained of herein are customs and usages of the eight secret owners.

11. Defendant, Trinity Food Services is a for profit entity, subcontracted by Immigration Centers of America to provide food services in a supposed safe and hygiene environment to detainees at the facility. This entity has implemented, executed and adopted the policies, practices, acts, and omissions complained of herein through formal adoption or pursuant to governmental customs. The policies, practices, acts, and omissions complained of herein are customs and usages of the defendant, Trinity Food Services.

2

12. Defendant, Jeffrey Crawford, is the Director of the Immigration Centers of America facility at Farmville. As such, he is responsible for all operations and responsibilities of the facility and bears personal custody, care, safety and treatments for all detainees. He is being sued both in his official and personal capacity.

13. Defendant, Douglas Kingery is now the Chief of Training and former Chief of Security at the Immigration Centers of America facility in Farmville. As such, he was responsible for plaintiff's security, safety and responsibilities of the facility and bears personal custody, care, safety and treatments for all detainees. He is being sued both in his official and personal capacity.

## FACTUAL ALLEGATIONS

14. On February 21, 2015, the plaintiff submitted a formal complaint to ICA concerning a serious incident which occurred during lunch. *See Exhibit 1*. His complaint was concerning contaminated food trays that were served to the entire detainees' population on that day in Dormitory # 1.

15. The food was rotten and infested with maggots. What was shocking to the plaintiff and to most detainees is that the infestation was rampant and most of the maggots were alive.

16. Immediately thereafter, the plaintiff along with other detainees notified the Dorm Officer who was on duty that day, Mr. Rodriguez, who in turn notified the Shift Commander Mr. Jones. The shift commander promised all detainees that everyone in the chain of command was going to be notified about this serious incident, including Director Crawford.

17. On February 26, 2015, the Director acknowledged the problem and ordered a thorough investigation into the matter. Specifically, he posted a memo in the Dorm, stating that **"there were several portioned trays served during dinner that contained Larva of some kind."** All while despite the fact that all the trays that were served on that day were contaminated and infested with maggots. *See Exhibit # 2.*

18. Instead for accepting responsibility and rectifying the problem the Director pointed blame at the detainee work force in the Kitchen. The Director claimed that **"the investigation is in the final stages and has revealed evidence of tampering with the food by detainees who worked in the kitchen."** And he went on to state that **"our investigation has concluded that a detainee or a**

**group of detainees planted the Larva on the food trays in the kitchen,"** Passing blame at detainees was unfortunate, mean spirited and disingenuous.

19. Despite the Directors admission he also lashed out at detainees by accusing them for the infestation, **"I am also aware there are a few detainees within the population that are trying to degrade the reputation of this facility, they are leveling accusations against this facility that are not based in any reality and are making attempts to tarnish our reputation and good name in the community."** He went on to state that **"I will not be manipulated or intimidated by liars and those within the population looking to steer trouble."**

20. The Director's memo while addressed to all detainees, but his verbal assault was clearly directed at the plaintiff because he was the one who was asking a lot of questions on the incident and challenging the Director's credibility. The Director clearly did not like the fact that the plaintiff was pushing this grave safety issue. And thus he was slandered of being a liar.

21. The Director called the plaintiff a liar in his memo in order to divert the subject. What also stunning is that in the Director's initial response to the plaintiffs enquiries one of nonchalant, he blatantly wrote that **"there were no maggots in the food"** without bearing witness to the contaminated trays. See *Exhibit 3(a) Director's Denial.* Moreover this denial sentiment was also echoed by the Deputy Director of operations Mr. Matthew Jackson. See *Exhibit 3(b) and (c).*

22. The Director's accusation on detainees is disingenuous because an ICE agent assigned at the facility, a certain Ms. Davila, stunningly admitted that the food was indeed actually contaminated at the manufacturer and not by detainee workers in the kitchen. Ms. Davila admission was in direct contradiction with what the facility were cooking up to be the case. See *Exhibit 4 ICE Internal Investigation Result (Stating the True Source of the contamination).*

23. ICE conducted a thorough investigation and concluded that **"it turned out to be a bad batch of beef soup mix that was contaminated at the manufacturer."** See *Exhibit 4 ICE Investigation Result (Stating the true source of the contamination).*

24. ICE found and placed the negligence on Trinity Food Services which is an for profit, in-house, food services subcontractor with Immigration Centers of

4

America. Instead of pointing fingers on Trinity Food Services, Director Crawford placed the blame on kitchen worker detainees as scapegoats. See Exhibit 5.

25. In a separate incident, days immediately following the maggot scandal, the plaintiff found a rock the size of a bean in his food tray. See Exhibit 6.

26. The plaintiff wrote a complaint about this incident and got back an arrogant response from the facility, of which incident he notified ICE. And ICE agent Ms. Davila responded that **"I assure you, ICE and management are working very closely to ensure that this does not happen again."** See Exhibit 7 ICE's response to stone incident.

27. The plaintiffs' inquiries to the incident were met with evasive, defensive and threatening responses. See Exhibit 3(a) and 3(b).

28. The plaintiff was targeted by the then Chief of Security, Mr. Kingery, who was visibly angry at the plaintiff for merely asking questions about the dangerous environment that he was being subjected to.

29. The facility has a no retaliation policy, but in obvious retaliation Mr. Kingery promptly moved the plaintiff from Dorm #1 to Dorm #5 and then twenty minutes later he was whisked to Dorm #3. In violation of the plaintiff's security, he was housed with a certain Marvin Jones who the facility knew quite well that Mr. Jones had just assaulted the plaintiff's nephew, Carlos Brizuela a few days earlier. The Chief of security Mr. Kingery who was supposedly aware of all security matter and concerns for all detainees made a calculated decision to place the plaintiff, who is 55 year old frail man in the same room with this big and muscular aggressive young man who had just assaulted the plaintiff's nephew. Mr. Jones was under the impression that the plaintiff had moved to Dorm #3 in order to get back at him for assaulting his nephew. This facility and Mr. Kingery deliberately exposed his life to grave harm; they absolutely knew what they were doing. The plaintiff's transfer to Dorm #3 was purposely done in retaliation for his being inquisitive about the maggot incident and was an attempt to silence him. He could have easily been bullied, beaten or even killed by that very violent individual Mr. Jones. The facility's handling of the plaintiff was reckless endangerment to his life. Pure and simple.

30. Mr. Kingery behavior was purposely done to punish the plaintiff for asking questions. Mr. Kingery personally and recklessly endangered the plaintiff's life. For fear of his life the plaintiff requested to be moved to a different Dorm #4. Mr.

5

Kingery further threatened the plaintiff that if he wasn't going to let it slide, then he Mr. Kingery was personally going to get the plaintiff transferred to "Texas or Georgia." Mr. Kingery abused his authority and caused reckless endangerment to the plaintiff's life. The plaintiff is now suffering severe permanent mental harm partly from Mr. Kingery's threats. *See* *Exhibit 8.*

## **HARM**

31. The maggot incident severely traumatized the plaintiff. He vividly gets flashbacks every day when trays are served and has lost all trust that the facility can provide adequate safety to his personal self and also to his food.

32. After the plaintiff started to experience frequent nightmares and feeling nauseated every time the trays were served, he decided to seek mental evaluation. *See* *Exhibit 9*.

33. The plaintiff was evaluated by Dr. Wayne R. O'Brien a mental Doctor from Armor Correctional Health Services INC. Dr. O'Brien concluded and found that the maggot incident severely traumatized the plaintiff and he was diagnosed with Post Traumatic Stress Disorder or PTSD. *See* *Exhibit 10*.

34. Dr. O'Brien also referred the plaintiff to get an expert psychiatric diagnosis with a certain Dr. Luis F. Ignacio. Accordingly he received several evaluations by Dr. Ignacio who concluded that the maggot incident was so traumatic for any human-being to bear. Human-beings are not programmed to see live maggots in their food. Dr. Ignacio confirmed that the plaintiff is now suffering from PSTD and he prescribed him daily doses of Prazosin which helps him to get by every day. But the permanent damage to his life has already been done; he will; never be the same like he was before. *See* *Exhibit 10*.

35. Both Drs. O'Brien and Ignacio have attributed and certified that the plaintiff's PTSD condition is a direct result to the maggot incident.

## **ADEQUATE REMEDY OF LAW**

36. As a proximate result of the defendant's policies, practices, acts, and omissions complained of herein, and the conditions and circumstances described herein to which the plaintiff was **recklessly** subjected to, plaintiff has suffered permanent mental harm, does and will continue to suffer immediate and irreparable mental injury. Plaintiff has no plan, adequate, or complete remedy at law to redress the wrongs described herein, plaintiff will continue to suffer irreparably injuries by the

6

policies, practices, acts, and omissions of the defendants unless this Court grants the injunctive relief.

## FINANCIAL DISCLOSURES

Predictably, ICA and Amor Correctional Health will move to seal its financial disclosures from the public. Since ICA profits from tax payer's money, and for the interest of the public and also in remaining faithful to the first amendment, the plaintiff respectfully asks this honorable court to reject any secrecy of this action and reject any request from the defendants to hide their identities and to seal financial disclosures in order to transparency and no conflict of interests pursuant to Fed. R. Civ. P.7.1 and E.D. Va. Loc. R.7.1.

## PRAYER FOR RELIEF

**WHEREFORE, PLAINTIFF PRAYS THAT THIS COURT WILL:**

Issue a declaratory judgment pursuant to 28 U.S.C. 2201 and 2202, and Rule 57 of the Federal Rules of Civil Procedure, that the policies, practices acts and omissions complained of herein deprive plaintiff of the right to be free from cruel and unusual punishment guaranteed by the Eighth and Fourteenth Amendments to the United States Constitution.

Issue preliminary and permanent injunctions sufficient to rectify the unconstitutional acts and omissions alleged herein, as follows;

a. Issue preliminary and permanent injunction restraining and prohibiting defendant from transferring plaintiff to any detention center or any other facility in retaliation for the instant complaint or where there exist the conditions complained of herein.
b. Restrain jurisdiction over defendants and each of them until such time as the Court is satisfied that their unlawful policies, practices, acts and omissions complained of herein no longer exist and will not recur.

(I)

FOR INJURIES TO PLAINTIFF, ISMAEL BRIZUELA, AWARD GENERAL DAMAGES AGAINST IMMIGRATION CENTERS OF AMERICA, IN THE AMOUNT OF $2,540,000.00, OR SUCH DAMAGES AS MAY BE PROVEN AT TRIAL.

(II)

FOR INJURIES TO PLAINTIFF, ISMAEL BRIZUELA, AWARD GENERAL DAMAGES AGAINST TRINITY FOOD SERVICES, IN THE AMOUNT OF $250,000.00, OR SUCH DAMAGES AS MAY BE PROVEN AT TRIAL.

(III)

FOR INJURIES TO PLAINTIFF, ISMAEL BRIZUELA, AWARD GENERAL DAMAGES AGAINST MR. JEFFREY CRAWFORD, IN THE AMOUNT OF $125,000.00 OR SUCH DAMAGES AS MAY BE PROVEN AT TRIAL.

(IV)

FOR INJURIES TO PLAINTIFF, ISMAEL BRIZUELA, AWARD GENERAL DAMAGES AGAINST MR. DOUGLAS KINGERY, IN THE AMOUNT OF $125,000.00 OR SUCH DAMAGES AS MAY BE PROVEN AT TRIAL.

(V)

AWARD PLAINTIFF REASONABLE ATTORNEY FEES, PURSUANT TO 42 U.S.C.1983, AND ALL COSTS OF THIS ACTION.

AWARD SUCH OTHER AND FURTHER RELIEF AS TO THIS COURT DEEMS JUST AND PROPER.

## ATTESTATION

UNDER THE PENALTY OF PERJURY, THE UNDERSIGNED DECLARES THAT HE IS THE PLAINTIFF IN THE FOREGOING COMPLAINT AND KNOWS THE CONTENTS THEREOF AND THAT THE PLEADINGS ARE TRUE AND MATTERS THAT HE BELIEVES TO BE TRUE. HE FURTHER VERIFIES THAT THE FOREGOING PLEADINGS ARE TRUE AND CORRECT AND ARE MADE UNDER PENALTY OF PERJURY WITHOUT THE BENEFIT OF NOTARY.

ISMAEL BRIZUELA
A 023 434 301
*PRO SE*
508 WATERWORKS RD
FARMVILLE, VA 23901