**IN THE UNITED STATES DISTRICT COURT FOR THE**
**EASTERN DISTRICT OF VIRGINIA**

**Alexandria Division**

| | | |
|---|---|---|
| Ismael Brizuela, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **1:15cv1662 (CMH/IDD)** |
| | ) | |
| Immigration Centers of America, et al., | ) | |
| Defendants. | ) | |

<u>MEMORANDUM OPINION AND ORDER</u>

Ismael Brizuela was an ICE detainee confined at the Farmville Detention Center when he

filed this pro se civil rights action, pursuant to 42 U.S.C. § 1983, alleging that two instances of

being served contaminated food violated his Eighth Amendment rights, and that he suffered

retaliation after he complained.  Plaintiff has now filed a change of address to what appears to be

a residence in Texas.  Plaintiff has neither submitted the filing fee required by 28 U.S.C. §

1914(a)  nor applied to proceed in forma pauperis in this action. For the reasons which follow,

plaintiff's claims will be dismissed pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a

claim upon which relief can be granted.[1]

---

[1] Section 1915A provides:

> (a) **Screening.**—The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.

> (b) **Grounds for dismissal.**—On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint—
> > (1) is frivolous, malicious, or fails to state a claim upon which relief can be granted; or
> > (2) seeks monetary relief from a defendant who is immune from such relief.

## I. Plaintiff's Allegations

Plaintiff alleges that he has consumed rice virtually on a daily basis since he was "a little boy in the mid 1960's," but "on 02/21/2015 everything changed" when he and his fellow detainees at the Farmville Detention Center ("FDC") were served "rotten maggot infested food." (Dkt. 1, Aff. of Facts at ¶¶ 2, 4)  Plaintiff asserts that this incident has left him unable to eat rice, because he "began experiencing excruciating nightmares about maggots in [his] food" in which he "feel[s] that rice [he] ha[s] eaten was not actually rice but maggots," his "whole body is being used as a breeding ground for maggots," and he "feels like [he is] being eaten alive by those maggots from the inside out."  As a result, he is "now leaving [sic] in a new world that [he] don't wish on anybody."  Id., ¶ 6.  Plaintiff alleges that he "vividly gets flashbacks every day" when food trays are served," he has "started to experience frequent nightmares," and he suffers from post-traumatic stress disorder as the result of "the maggot incident."  Compl. at ¶¶ 31-35.

In a second incident, plaintiff found "a rock the size of a bean in his food tray" a few days after the "maggot scandal."  Compl. at ¶ 25.  He submitted a detainee request form regarding the incident on February 25, 2015, in which he stated, "I could have gotten hurt had I bitten that rock."  Compl., Ex. 5.  Officer R. Davila responded that "ICE, as well as ICA ... are making every effort to ensure it does not happen again."  Id.

Following the two food incidents, plaintiff allegedly was "targeted" by FDA's Chief of Security, Mr. Kingery.  "In obvious retaliation," Mr. Kingery moved plaintiff from Dorm #1 to Dorm #5 and then to Dorm #3, where plaintiff was housed with Marvin Jones, who had assaulted plaintiff's nephew a few days earlier.  Plaintiff chracterizes this as "a calculated decision to place the plaintiff, who is a 55 year old frail man in the same room with this big and muscular aggressive young man" that "deliberately exposed his life to grave harm."  He asserts that it

amounted to "reckless endangerment to his life." Compl. at ¶¶ 28-30.

The named defendants are Immigration Centers of America LLC; "the eight secret owners of ICA;" Trinity Food Services; Jeffrey Crawford, the Director of FDA; and Douglas Kingery, the Chief of Training and for Chief of Security at FDA.   As relief, plaintiff seeks declaratory and injunctive relief, as well as monetary damages in an aggregate amount of $ 3,040,000.00.

## II. Standard of Review

In reviewing a complaint pursuant to § 1915A, a court must dismiss a prisoner complaint that is frivolous, malicious, or fails to state a claim upon which relief can be granted.  28 U.S.C. § 1915A(b)(1).  Whether a complaint states a claim upon which relief can be granted is determined by "the familiar standard for a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." Sumner v. Tucker, 9 F. Supp. 2d 641, 642 (E.D. Va. 1998); Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).  To  survive a 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. ----, ----, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570  (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to meet this standard, id., and a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level...". Twombly, 550 U.S. at 55.  Moreover, a court "is not bound to accept as true a legal conclusion couched as a factual allegation." Iqbal, 129 S. Ct. at 1949-1950.

Courts may also consider exhibits attached to the complaint. United States ex rel. Constructors, Inc. v. Gulf Ins. Co., 313 F. Supp. 2d 593, 596 (E.D. Va. 2004).  Where a conflict

exists between "the bare allegations of the complaint and any attached exhibit, the exhibit prevails." Id. at 596 (citing Fayetteville Investors v. Commercial Builders, Inc., 936 F.2d 1462, 1465 (4th Cir.1991)).

### III. Analysis

#### A. Food Claims

As to the incident where plaintiff allegedly discovered a rock in his food, it is well settled that "inmates must be provided nutritionally adequate food, 'prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it.'" Shrader v. White, 761 F.2d 975, 986 (4th Cir. 1985) (citations omitted); see Bolding v. Holshouser, 575 F.2d 461, 465 (4th Cir.), cert. denied, 439 U.S. 837 (1978) (concluding inmate's allegation of failure to provide adequate sanitary food service facilities can state a cognizable claim). Although the Eighth Amendment requires prisons to provide inmates with wholesome and nutritious meals, an inmate must allege a serious injury arising from the provision of inadequate food to state an Eighth Amendment violation.[2] Wilson v. Seiter, 501 U.S. 294, 298 (1991); White v. Gregory, 1 F.3d 267, 268 (4th Cir. 1993), cert. denied, 510 U.S. 1096 (1994) (concluding that plaintiff failed to state a claim because he failed to allege "serious or significant physical or mental injury" from being served only two meals a day on holidays and weekends); Islam v. Jackson, 782 F. Supp. 111, 114-115 (E.D. Va. 1992) (holding that plaintiff

---

[2]Plaintiff specifically brings his claims regarding the food incidents at FDC as Eighth Amendment violations. It is unclear whether the Eighth Amendment is applicable, since plaintiff is an immigration detainee whose detention may or may not also involve a criminal conviction. If plaintiff is a non-criminal immigration detainee, his claims are governed by the Due Process Clause of the Fourteenth Amendment. However, it is well established that the due process rights of a detainee are at least as great as the Eighth Amendment protections available to a convicted prisoner. Slade v. Hampton Roads Regional Jail, 407 F.3d 243, 250 (4th Cir. 2005). Therefore, the Eighth Amendment standards are used for analytical purposes here.

who became ill after eating one meal but was treated immediately and suffered no lasting affects did not state a serious injury); <u>Lunsford v. Reynolds</u>, 376 F. Supp. 526 (W.D. Va. 1974) (determining that a claim of occasional incidents of foreign objects in food does not state Eighth Amendment claim).  Here, it is clear that plaintiff suffered no injury whatever, much less a serious one, as the result of finding the rock in his food.  That is so because he stated on the institutional grievance he filed regarding the incident only that he "could have gotten hurt had [he] bitten that rock."  Compl., Ex. 5.  Therefore, plaintiff's claim of unconstitutional conditions of confinement based on his discovery of a rock in his food will be dismissed  pursuant to § 1915A(b)(1) for failure to state a claim upon which relief can be granted.

In a second claim related to food service at FDA, plaintiff states that on February 21, 2015, he ingested rice that was infested with maggots, and that as a result he experiences nightmares, migraines, "mental torture and anguish," and itchy skin, and his "mind is now messed up."  Pltf. Aff., ¶ 6.  While these allegations of ongoing mental and physical problems relating to the ingestion of the contaminated rice otherwise could be sufficient to state an Eighth Amendment claim, plaintiff has included exhibits to the complaint that make it clear that none of the named defendants can be liable for the harm he alleges.

First, the exhibits plaintiff has supplied belie his allegations that the rice in question was infested with maggots.  In fact, when the exhibits are considered, as they appropriately may be, <u>Gulf Ins. Co.</u>, 313 F. Supp. at 596, they reveal that there were no maggots in the rice.  On February 26, 2015, Director Crawford addressed a memorandum to FDA's detainee population regarding the incident.  In pertinent part, it stated:

> As you all may know this past weekend, there were several portioned
> trays served during the dinner meal on Saturday that contained larva
> of some kind; the vast majority of the dorms were not affected.  As
> the director of the facility I take such matters extremely seriously.  I

ordered a complete investigation into the problem. That investigation is in the final stages and has revealed evidence of tampering with the food by detainees who worked in the kitchen.

Immediately following the compromised meal, a food service investigator was brought to the facility on Sunday. The investigator performed tests on every product used in the meal served on Saturday night. Several trays from Saturday night were also preserved as evidence and used for testing. Tests of all the ingredients revealed that there was no contamination in any of the ingredients used. Our investigation has concluded that a detainee, or group of detainees, planted the larva on the food trays in the kitchen.

A few detainees alleged that the kitchen personnel used expired food to make up the meal from Saturday night. As part of the investigation, that allegation was also investigated. There were no expired food or food products found in the kitchen inventory. Additionally the facility had an unannounced routine inspection from the county health department on Thursday, February 19, 2015. Had any expired foods been present, the health department inspector would have cited the facility for a violation. The county health inspector found one deficiency in the kitchen related to a crack in the floor for safety concerns. There were no other violations reported by this independent inspector.

Compl., Ex. 2. Director Crawford further observed that "a few detainees within the population ... are trying to degrade the reputation of this facility" by "leveling accusations against this facility that are not based in any reality." Id.

Plaintiff has also included a copies of detainee request forms he submitted regarding the incident. On March 21, 2015, plaintiff stated to Deputy Jackson that "we haven't had an explanation as to what happened or how it happened." The deputy responded, "First there were no maggots in the food. [Emphasis added] Secondly Mr. Crawford indicated that during the beginning of the investigation the evidence suggested product tampering by a detainee. Lastly the investigation has been completed. The situation was corrected. And it is our responsibility to

hold the responsible party(s) accountable not yours." Compl. Ex. 3(b).  On March 26, 2015,

plaintiff addressed a detainee request to Director Crawford,  stating that he was experiencing

"nightmares about that horrible episode" and stated that "we haven't had no explanation as to

what happened or how it happened."  Director Crawford responded, "Detainee BRIZUELA-

MARCIA, you've been informed several times about this incident, the outcome of the

investigation, and the fact that there were no maggots in the food.  [Emphasis added]  I am

surprised you continue to submit requests asking the same questions."  Compl. Ex. 3(a).

On March 27, 2015, Officer R. Davila responded to a detainee request form by stating

to plaintiff that "it was a very unfortunate incident that occurred in the kitchen.  It was [illegible]

error or fault of anyone who worked in the kitchen, but appears that way at first.  It turned out to

be a bad batch of Beef Soup Base Mix that was contaminated at the manufacturer.  Item,

[illegible] and Lot # have all been provided."  Compl., Ex. 4.

Second, even if the rice had been infested with vermin, as plaintiff claims, he has

submitted another exhibit that belies his claim that the symptoms he describes were caused by

ingestion of the allegedly contaminated  rice. On a Mental Health Rounds contact form dated

September 9, 2015, Wayne O'Brien, Ph.D., LPN referred plaintiff to see a psychiatrist.  Under

"Nature of Problem, he wrote: "Nightmares.  'Awake - he believes see rice move a see varmints.'

Tears are 'about the injustice he experiences here.'  Sadness. Locked up for over 6 years - 5 of

those in jail.  He said, 'I feel like I'm being tortured for something I didn't do.'  Complains about

many people/system.  They 'moved him from dorm to dorm.'  No solutions.  'Worried about his

case - trying to overturn former conviction.'  Children, 3 grandchildren. EU psychiatrist on 9-28-

15."  Compl., Ex. 10 at 7.  The doctor's notes indicate that while plaintiff did mention having

hallucinations of seeing things in his food, id., his nightmares and depression were linked instead to his general circumstances of being incarcerated and concerned about his family as opposed to the ingestion of the rice. Thus, as plaintiff's exhibits contradict his allegations that his ongoing mental and physical problems were caused by eating the rice, he fails to satisfy the requirement that a serious injury must have resulted from the provision of inadequate food to state an Eighth Amendment violation. Wilson, 501 U.S. at 298. Accordingly, plaintiff's claim that his constitutional rights were violated by the food he received at FDC fails to state a claim for which relief can be granted.

B. Retaliation/Endangerment

As to plaintiff's allegations concerning his transfer to the same cell as inmate Marvin Jones, plaintiff characterizes that action as both retaliation and reckless disregard of his safety by defendant Mr. Kingery. To the extent that plaintiff claims retaliation, to succeed on such a claim an inmate must allege facts sufficient to demonstrate that the alleged retaliatory act "was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994). Thereafter, he must demonstrate that he suffered some adverse impact or actual injury. ACLU of Md., Inc. v. Wicomico County, Md., 999 F.2d 780, 785 (4th Cir. 1993). Additionally, an inmate must come forward with specific evidence "establish[ing] that but for the retaliatory motive, the complained of incident ... would not have occurred." Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1995). It is apparent that plaintiff in this case cannot satisfy these elements, because he suffered no actual injury as the result of the transfer to Jones' cell; instead, he states only that he "could have been" bullied, beaten or even killed by Jones. Compl. at 5. Furthermore, plaintiff does not allege that the transfer occurred in response to the exercise of a constitutionally protected right; rather, he states

that it happened because plaintiff was "asking questions about the dangerous environment that he was being subjected to." Id. Accordingly, plaintiff states no actionable claim for retaliation.

To the extent that plaintiff characterizes his transfer to Marvin Jones' cell as endangerment, it fares no better. The Eighth Amendment imposes a duty on prison officials "to protect prisoners from violence at the hands of other prisoners." Farmer v. Brennan, 511 U.S. 825, 834 (1994); Wilson v. Seiter, 501 U.S. 294, 198 (1991). However, not "every injury suffered by one prisoner at the hands of another translates into constitutional liability for prison officials responsible for the victim's safety." Id. To establish a claim for failure to protect, a plaintiff must show: (1) "serious or significant physical or emotional injury," De'Lonta v. Angelone, 330 F.3d 630, 634 (4th Cir. 2003); and (2) that the prison officials had a "sufficiently culpable state of mind." Farmer, 511 U.S. at 834 (internal quotation marks omitted); Odom v. S. C. Dep't of Corr., 349 F.3d 765, 770 (4th Cir. 2003). As to the first prong, "[o]nly extreme deprivations are adequate," De'Lonta, 330 F.3d at 634; thus, the deprivation must be "objectively, sufficiently serious." Odom, 349 F.3d at 770, quoting Wilson, 501 U.S. at 298. Since plaintiff admittedly suffered no actual injury as the result of the cell transfer, he states no claim for endangerment, and his claim that his constitutional rights were violated when he was transferred to inmate Jones' cell will be dismissed pursuant to § 1915A for failure to state a claim upon which relief can be granted.

C. Claims Against Improper Defendants

In addition, plaintiff can state no claims against named defendants Immigration Centers of America or Trinity Food Services. To state a cause of action under § 1983, a plaintiff must allege facts indicating plaintiff was deprived of rights guaranteed by the Constitution or laws of the United States and that this deprivation resulted from conduct committed by a person acting

under color of state law.  See West v. Atkins, 487 U.S. 42 (1988).  As both of these defendants

are not persons, they can have no liability to plaintiff pursuant to § 1983, and his claims against

them accordingly will be dismissed pursuant to §1915A.

In addition, plaintiff has stated no cognizable claim against named defendants "the eight

secret owners of ICA."  Plaintiff asserts that these individuals "profit from mistreatment of

detainees" and that their company "has implemented, executed and adopted the policies,

practices, acts, and omissions complained of herein."  Compl. at 2.  To state a cause of action

under § 1983, a named defendant must have had personal knowledge of and involvement in the

alleged violations of plaintiff's constitutional rights for the action to proceed against him.

Plaintiff's allegations against the "the eight secret owners of ICA" do not meet this test, and as a

result his claims against them will be dismissed pursuant to §1915A.

Lastly, plaintiff states no claim against defendant Jeffrey Crawford, the Director of FDA.

Plaintiff alleges that Crawford should be liable because "he is responsible for all operations and

responsibilities of the facility and bears personal custody, care, safety and treatments for all

detainees."  Compl. at 3.  It thus appears that Director Crawford has been sued solely on the basis

of his supervisory position. However, supervisory officials may be held liable only in certain

circumstances for the constitutional injuries inflicted by their subordinates.  Shaw v. Stroud, 13

F.3d 791, 798 (4th Cir. 1994) (citing Slakan v. Porter, 737 F.2d 368 (4th Cir. 1984)).  This

liability is not premised on respondeat superior, but upon "a recognition that supervisory

indifference or tacit authorization of subordinates misconduct may be a causative factor in the

constitutional injuries they inflict on those committed to their care."  Id. at 798 (quoting Slakan,

737 F.2d at 372-73).  To establish supervisory liability under § 1983, a plaintiff must

demonstrate:

(1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices,"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

Id. at 799 (citations omitted). Here, plaintiff offers no facts, as opposed to speculative assertions, to demonstrate that Director Crawford had actual or constructive knowledge that subordinates were engaged in conduct that posed a "pervasive and unreasonable risk" of constitutional injury to plaintiff. Accordingly, plaintiff's claim against him is subject to dismissal pursuant to §1915A.

## IV. Conclusion

For the foregoing reasons, it is hereby

ORDERED that this action be and is DISMISSED WITH PREJUDICE for failure to state a claim, pursuant to 28 U.S.C. § 1915A(b)(1); and it is further

ORDERED that plaintiff's application to proceed in forma pauperis (Docket # 2) be and is DENIED as moot; and it is further

ORDERED that plaintiff is advised that, pursuant to 28 U.S.C. § 1915(g),[3] this dismissal may affect his ability to proceed in forma pauperis in future civil actions; and it is further

ORDERED that the Clerk record this dismissal for purposes of the Prison Litigation Reform Act.

---

[3] 28 U.S.C. § 1915(g) provides:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

11

To appeal, plaintiff must file a written notice of appeal with the Clerk's Office within thirty (30) days of the date of this Order.  <u>See</u> Fed. R. App. P. 4(a).  A written notice of appeal is a short statement stating a desire to appeal this Order and noting the date of the Order plaintiff wants to appeal.  Plaintiff need not explain the grounds for appeal until so directed by the court.

The Clerk is directed to send of copy of this Order to plaintiff and to close this civil case.

Entered this _7th_ day of _December_ 2016.

_Claude M. Hilton_
United States District Judge

Alexandria, Virginia

.